UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. M. MILLER BAKER, JUDGE

| | |
|---|---|
| RAYMOND GEDDES & COMPANY, INC., *Plaintiff*, v. UNITED STATES *Defendant*. | Court No. 26-00865 |

**DEFENDANT'S CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS**

OF COUNSEL

John Flanagan
Attorney
U.S. Customs and Border Protection
Office of Chief Counsel
International Trade Litigation

October 2, 2026

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

ADAM A. VISCHIO
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278
(202) 305-5528
*Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION .......... 1

I. CBP Did Not Factually Misapply The AD Order; Consequently, There Has Been No Protestable Decision That Would Trigger Judicial Review Under 28 U.S.C. § 1581(a) .......... 2

II. Plaintiff's Remedy Is To Request A Scope Ruling From Commerce, And If Appropriate, Seek Judicial Review Under 28 U.S.C. § 1581(c) .......... 15

CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Cases**

*Mitsubishi Electronics America, Inc. v. U.S.*,
44 F.3d 973 (Fed. Cir. 1994 .......... 15

*School Specialty, LLC v. United States*,
Court No. 24-00098, 2025 WL 2171718 (July 31, 2025) .......... 11

*Sunpreme Inc. v United States*,
946 F.3d 1300 (Fed. Cir. 2020) .......... 3, 13

*U.S. Shoe Corp. v. United States*,
114 F.3d 1564 (Fed. Cir. 1997) .......... 15

*Ugine & ALZ Belg. N. V. v. United States*,
517 F. Supp. 2d 1333 (Ct. Int'l Trade 2007) .......... 18

*Wirtgen America, Inc. v. United States*,
437 F.Supp. 3d 1302 (Ct. Int'l Trade 2020) .......... 14
*Xerox Corp. v. U.S.*,
289 F.3d 792 (Fed. Cir. 2002) .......... passim

**Statutes**

19 U.S.C. § 1337 .......... 14
19 U.S.C. § 1516a(a)(2)(B)(vi) .......... 16
19 U.S.C. § 1671e(a)(2)) .......... 3
19 U.S.C. § 1673e(a)(2) .......... 3
28 U.S.C. § 1581(c) .......... 2, 17
28 U.S.C. § 1581(a) .......... 3, 10

**Other Authorities**

*Certain Cased Pencils from the People's Republic of China*,
59 Fed. Reg. 66,909 (Dep't of Commerce, 1994) .......... 2
*Certain Cased Pencils From the People's Republic of China: Continuation of Antidumping Duty Order*,
88 Fed. Reg. 15,673 (Dep't of Commerce, 2023) .......... 2

**Regulations**

19 C.F.R. § 159.41 .......... 3
19 C.F.R. § 159.47 .......... 3
19 C.F.R. § 351.211 .......... 3
19 C.F.R. § 351.225(a) .......... 17

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. M. MILLER BAKER, JUDGE

| | |
|---|---|
| RAYMOND GEDDES & COMPANY, INC.,<br>*Plaintiff*,<br>v.<br>UNITED STATES<br>*Defendant*. | Court No. 26-00865 |

**DEFENDANT'S CORRECTED REPLY IN SUPPORT OF MOTION TO DISMISS**

Pursuant to United States Court of International Trade Rule 12(b)(1), the United States defendants ("the Government") respectfully submit this reply in support of its motion to dismiss for lack of subject-matter jurisdiction.

## INTRODUCTION

Plaintiff, Raymond Geddes & Company, Inc. (Raymond Geddes), argues that U.S. Customs and Border Protection (CBP) made a protestable decision when it assessed antidumping duties on its imported pencils, and therefore triggered the basis for judicial review under 28 U.S.C. § 1581(a). But, as we show below, that is not the case.

CBP applied the antidumping order covering *Certain Cased Pencils from the People's Republic of China*[1] ("the AD Order") in a ministerial way, and pursuant to guidance from the U.S. Department of Commerce (Commerce) indicating that Raymond Geddes' pencils fell under the scope of the relevant AD Order. There has been no factual misapplication of the duty order. Rather, the true nature of Plaintiff's complaint is a dispute about the scope of the AD Order. Plaintiff must first seek a scope ruling. Should Plaintiff receive an undesirable answer, it can then seek judicial review pursuant to 28 U.S.C. § 1581(c). But presently, no subject matter jurisdiction exists, and the case should be dismissed.

## I. CBP Did Not Factually Misapply The AD Order; Consequently, There Has Been No Protestable Decision That Would Trigger Judicial Review Under 28 U.S.C. § 1581(a)

As we demonstrated in the motion to dismiss, both Commerce and CBP have delegated roles with respect to duty orders. Commerce is "charged with writing antidumping and countervailing duty orders that

[1] *Certain Cased Pencils from the People's Republic of China*, 59 Fed. Reg. 66,909 (Dep't of Commerce, 1994) and *Certain Cased Pencils From the People's Republic of China: Continuation of Antidumping Duty Order*, 88 Fed. Reg. 15,673 (Dep't of Commerce, 2023) ("AD Order").

'include{ } a description of the subject merchandise, in such detail as the administering authority deems necessary.'" *Sunpreme Inc. v. United States* (*Sunpreme 2018*), 892 F.3d 1186, 1188 (Fed. Cir. 2018) (quoting 19 U.S.C. §§ 1673e(a)(2), 1671e(a)(2)).

Separately, and for its part, CBP "applies and enforces the duty orders through the assessment and collection of antidumping and countervailing duties on imports of the investigated merchandise." *Sunpreme Inc. v United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2020) (*Sunpreme 2020*) (citing 19 C.F.R. §§ 159.41, 159.47, 351.211). CBP's task of determining whether a product falls within the scope of an antidumping or countervailing duty order "necessarily entails evaluating both the product and the order." *Sunpreme 2020*, 946 F.3d at 1320 (Fed. Cir. 2020). "When merchandise may be subject to an antidumping duty order, Customs makes factual findings to ascertain what the merchandise is, and whether it is described in an order. If applicable, Customs then assesses the appropriate antidumping duty." *Xerox Corp. v. U.S.*, 289 F.3d 792, 794 (Fed. Cir. 2002).

Judicial review under 28 U.S.C. § 1581(a) of CBP's application and enforcement of duty orders is limited. "{W}here the scope of a duty order

is 'unambiguous and undisputed, and the goods clearly do not fall within the scope of the order,' {CBP's} *misapplication* of the duty order is a protestable decision reviewable by the CIT under § 1581(a)." *Sunpreme 2018*, 892 F.3d at 1192 (quoting *Xerox*, 289 F.3d at 795 (emphasis added)). Here, plaintiff cannot establish jurisdiction under section 1581(a) because there has been no factual misapplication of the antidumping duty order, which would give rise to a protestable determination.

To level set, we describe the procedural landscape of CBP's application of the AD Order. First, CBP examined the language of the scope of the AD Order itself, which covers:

> Imports covered by the Order are shipments of certain cased pencils of any shape or dimension (except as described below) which are writing and/or drawing instruments that feature cores of graphite or other materials, encased in wood and/or man-made materials, whether or not decorated and whether or not tipped (e.g., with erasers, etc.) in any fashion, and either sharpened or unsharpened. The pencils subject to the Order are currently classifiable under subheading 9609.10.00 of the Harmonized Tariff Schedule of the United States (HTSUS).

Compl. Exh. 1 at 2.

Next, CBP looked at a scope ruling from Commerce involving imports of certain cased pencils *manufactured* in the Republic of the Philippines (the Philippines) with inputs imported from the People's Republic of China. *Certain Cased Pencils from the People's Republic of China: Scope Ruling on Products Produced by School Specialty, LLC in the Philippines* (Case No. A-570-827) ("School Specialty Scope Ruling.") (May 6, 2024) *available at* 89 Fed. Reg. 90266. Commerce's administration of the Scope Ruling began with a message establishing a third country case number to allow for the importation of certain cased pencils manufactured in the Philippines with inputs from China:

> Effective 12/01/2017, Commerce established a third country case number to allow for the importation of certain cased pencils manufactured in the Republic of the Philippines (the Philippines) with inputs imported from the People's Republic of China. We examined certain cased pencils manufactured in the Philippines in the scope inquiry requested by School Specialty, LLC (School Specialty). As a result of the scope ruling, Commerce found that products covered by the ruling assembled by School Specialty in the Philippines using Chinese imported inputs and exported from the Philippines to the United States should be properly reported as subject to the order on certain cased pencils from the People's Republic of China (A-565-827) upon entry.

*See* AD/CVD Message No. 4165409 (June 13, 2024), available at https://www.customsmobile.com/adcvd/4165409.

On June 14, 2024, Commerce followed up with Message No. 4166410. Compl. Exh. 3. This message indicated, in relevant part, that:

> 1. On 05/06/2024, Commerce issued a final scope that certain cased pencils manufactured in the Republic of the Philippines (Philippines) with inputs imported from China are covered by the scope of the antidumping duty order on certain cased pencils from the People's Republic of China (China) (A-570-827).
>
> *2. Imported products (i.e., #2 pencils, drawing pencils, and colored pencils) are manufactured in the Philippines with inputs imported from China Commerce found that they have a Chinese country of origin, Commerce found these products to be within the scope of the order.*
>
> 3. Continue to suspend liquidation of entries of certain cased pencils from the People's Republic of China (A-570-827), including School Specialty's cased pencils manufactured in the Philippines with Chinese inputs described above, subject to the antidumping duty order on certain cased pencils from China.
>
> Commerce established a third-country case number to allow certain cased pencils manufactured in the Philippines with inputs imported from China to be reported as subject to the order on certain cased pencils from China.
>
> Third Country: Philippines
> Case Number: A-565-827

> Producer and/or Exporter: All Others
> Case Number: A-565-827-000
> Cash Deposit Rate: 114.90
>
> The third country AD/CVD case number above has been assigned for CBP purposes.

*Id*. (emphasis added).

On June 18, 2024, Commerce issued a "correction" to Message No. 4166410, stating that the Scope Ruling "is applicable only to merchandise produces and exported by School Specialty, LLC." AD/CVD Message No. 4170403 (June 18, 2024), available at https://www.customsmobile.com/adcvd/4170403. Yet, this same message included the same description as Message No. 4166410 regarding the applicability of case number A-565-827 to "all others." *Id*. The correction to Message No. 4166410 provides, in relevant part, as follows:

> 1. This is a correction to message 4166410, dated 06/14/2024, to correct the RE line and all paragraphs of that message.
>
> 2. The RE line and body of message 4166410 was based on a template for scope inquiries requested before 11/04/2021; however, this scope inquiry on certain cased pencils from the People's Republic of China (A-570-827) was requested after that date. Below is the fully corrected message.
>
> 3. On 05/06/2024, Commerce issued a final scope that certain cased pencils manufactured in the

Republic of the Philippines (Philippines) with inputs imported from China are covered by the scope of the antidumping duty order on certain cased pencils from the People's Republic of China (China) (A-570-827).

4. Specifically, Commerce determined that imported products (i.e., #2 pencils, drawing pencils, and colored pencils) are covered by the scope of the order because they are manufactured in the Philippines with inputs imported from China and Commerce found that they have a Chinese country of origin.

5. This final scope ruling is applicable only to merchandise produced and exported by School Specialty, LLC.

6. For all entries of certain cased pencils from the People's Republic of China (A-570-827), including School Specialty's cased pencils manufactured in the Philippines with Chinese inputs described above, not already subject to the suspension of liquidation, CBP should suspend liquidation of: (i) shipments entered, or withdrawn from warehouse, for consumption on or after 05/06/2024 (date of initiation of the scope inquiry), and (ii) shipments entered, or withdrawn from warehouse, for consumption prior to the date of initiation of the scope inquiry but no earlier than November 4, 2021 (effective date of the suspension rules in the new scope regulations). CBP shall require, for such entries, a cash deposit at the applicable rate(s) in effect on the date of entry.

Commerce established a third-country case number to allow certain cased pencils

> manufactured in the Philippines with inputs imported from China to be reported as subject to the order on certain cased pencils from China (A-570-827) upon entry.
>
> Third Country: Philippines
> Case Number: A-565-827

CBP and Commerce also communicated regarding a separate third country case number, A-552-627, involving pencils assembled in Vietnam but with components from China. Govt. Exh. 3, Inquiry No. 51718, filed under seal.

With this information in hand, the statutory task before CBP was to "answer{} a yes-or-no question as to whether the order applies, in order to fix the duty owed." *Sunpreme 2020,* 946 F.3d at 1320. "When the order is ambiguous, Customs is nonetheless called upon to answer the question." *Id.* at 1320–21

Here, upon review of the scope of the AD Order, the scope ruling involving pencils imported by School Specialty, and internal guidance from Commerce, CBP answered "yes" to the question on whether the AD Order applied to Raymond Geddes' pencils. This determination reflects no factual "misapplication" of the duty order. *Sunpreme 2018*, 892 F.3d at 1192 (quoting *Xerox*, 289 F.3d at 795 (emphasis added)).

Therefore, there has been no protestable decision that would give rise to the Court's jurisdiction under section 1581(a).

After the denial of Plaintiff's protest, CBP sought clarification from Commerce regarding the specific AD Order under review in this case because of "confusion with this third country case number."[2] *See* Govt. Exh. 4, Inquiry No. 51918. Specifically, on September 15, 2025, CBP inquired with Commerce regarding the applicability of third country case number A-565-827 to other importers besides School Specialty. *Id*. Commerce advised that third country case number A-565-827 should be used for entries that are subject to the AD Order. *Id*. Commerce further indicated that third country case number third-country case number A-565-827 is not limited to just School Specialty's merchandise. *Id*.

Plaintiff seems believe that the AD Order may only be applied, as a factual matter, to "raw and finished pencils *made in China*." Pl. Br. at 27 (emphasis added). Plaintiff also assumes that, if the China-

[2] CBP communicated with Commerce through CBP's Automated Commercial Environment (ACE). U.S. CUSTOMS AND BORDER PROTECTION, *ACE: The Import and Export Processing System*, available at https://www.cbp.gov/trade/automated (last accessed September 3, 2026).

originating parts of the pencil are "optional" or nonconsequential, as a factual matter, then the product must be excluded from the AD Order. *Id.* ("The only components that are of Chinese origin are optional—such as the ferrule, eraser and foil wrap. These components would not even affect the determination of where a pencil subject to the order had been manufactured—much less drive that determination.")

But that is not the case. There are no criteria in the order that unambiguously limit its application to pencils made wholly in China. Rather, the AD Order covers pencils assembled "using Chinese inputs." *See* AD/CVD Message No. 4165409 (June 13, 2024), available at https://www.customsmobile.com/adcvd/4165409. Indeed, Commerce found the pencils imported by School Specialty to be in-scope even though some of their components were further processed in the Philippines. *See School Specialty Scope Ruling*; *see also School Specialty, LLC v. United States*, Court No. 24-00098, 2025 WL 2171718 at *7–9 (July 31, 2025) (sustaining Commerce' country-of-origin determination and remanding for further proceedings based on this Court's instruction to further explain CBP's decision).

Similarly, there are no criteria in the AD Order that require CBP to engage in a factual analysis of the optionality of the components of the pencil, or their significance to the operation of the pencil, as a whole.

In short, plaintiff cannot demonstrate that CBP has factually misapplied the Order, which would give rise to a protestable determination and the Court's review of that determination under section 1581(a).

Plaintiff argues that "determining the applicability of an antidumping order to particular merchandise requires two factual determinations: one as to whether the merchandise is within the 'class or kind' of goods covered by an order; and one as to the country of origin of the goods." Pl. Br. at 25. With respect to the later question, Plaintiff argues that "the pencils are manufactured in the Philippines using wooden slats from Serbia and cores from the Philippines." Pl. Br. at 27. "The glue and lacquer are also products of the Philippines." *Id*. "The only components that are of Chinese origin are optional—such as the ferrule, eraser and foil wrap." Plaintiff then concludes, "[t]hese components would not even affect the determination of where a pencil

subject to the order had been manufactured—much less drive that determination." *Id*.

But CBP is under no obligation to engage in this level of analysis. As held by the U.S. Court of Appeals for the Federal Circuit,

> Customs is tasked with determining, for every imported product, whether the product falls within the scope of an antidumping or countervailing duty order. 19 U.S.C. § 1500(c). That necessarily entails evaluating both the product and the order. *Xerox* recognizes as much. 289 F.3d at 794 ("When merchandise may be subject to an antidumping duty order, Customs makes factual findings to ascertain what the merchandise is, and whether it is described in an order. If applicable, Customs then assesses the appropriate antidumping duty." (internal citation omitted)). In each instance, Customs is statutorily tasked with answering a yes-or-no question as to whether the order applies, in order to fix the duty owed. When the order is ambiguous, Customs is nonetheless called upon to answer the question.

*Sunpreme 2020,* 946 F.3d at 1320–21.

Plaintiff's arguments place too much burden on CBP's shoulders. Here, upon review of the scope of the Order, the scope ruling involving pencils imported by School Specialty, and internal messages from Commerce, CBP answered "yes" to the question on whether the AD Order applied to Raymond Geddes' pencils.

Plaintiff cites *Wirtgen America, Inc. v. United States*, 437 F.Supp. 3d 1302 (Ct. Int'l Trade 2020) for the assertion that "CBP's liquidation decision is protestable, even if it reflects directions provided by another agency and is carried out ministerially by CBP." *See* Pl. Br. at 26. However, *Wirtgen* is inapposite. In *Wirtgen*, the importer challenged CBP's exclusion of certain road milling machines after the International Trade Commission ("ITC") found a violation of 19 U.S.C § 1337 and issued a Limited Exclusion Order ("LEO"). 437 F. Supp. 3d at 1304. However, the merchandise CBP excluded was different, redesigned models of the road milling machines. *Id*. at 1305. These redesigned models were not subject to the LEO. Therefore, the Court found that CBP had not acted ministerially in this case because CBP "acted on its own to exclude the merchandise" without direction from the ITC. *Id*. at 1307.

Here, unlike in *Wirtgen*, CBP did not make a substantive decision or act pursuant to its own discretion. *Id*. Rather, CBP reviewed the language of the AD Order, the School Specialty scope ruling, and internal guidance from Commerce, and applied the Order. The Court's discussion of *Wirtgen* in *Rimco* is illustrative of this distinction between

when a Customs decision is protestable and when. *Rimco, Inc. v. United States*, 582 F. Supp. 3d 1313, 1320 (Ct. Int'l Trade 2022) aff'd 98 F.4th 1046 (Fed. Cir. 2024). When CBP acts ministerially in following Commerce's directions, there is no protestable decision. *Id.*[3]

### II. Plaintiff's Remedy Is To Request A Scope Ruling From Commerce, And If Appropriate, Seek Judicial Review Under 28 U.S.C. § 1581(c)

The question for which plaintiff is seeking an answer is determining the percentage of a pencil that must originate in China for the pencil to be considered in-scope. Pl. Br. at 18-19 ("question for the Court in this case is whether the interpretation resulting in the imposition of antidumping duties against Raymond Geddes'

[3] "It is well settled that in liquidating entries subject to countervailing and antidumping duties, CBP simply 'follows Commerce's instructions'—its role is 'merely ministerial.'" *Rimco,* 582 F. Supp. 3d at 1319-20 (quoting *Mitsubishi Electronics America, Inc. v. U.S.*, 44 F.3d 973, 977 (Fed. Cir. 1994)). "In other words, because CBP lacks discretion when it liquidates entries pursuant to Commerce's liquidation instructions, it 'does not make any section 1514 … 'decisions.' " *Id.* (quoting *Mitsubishi*, 44 F.3d at 977; *cf. U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1569 (Fed. Cir. 1997), *aff'd*, *United States v. United States Shoe Corp.*, 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998) ("Typically, 'decisions' of {CBP} are substantive determinations involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty.")).

merchandise—namely, that the antidumping order covering *Cased Pencils from the People's Republic of China* covers 'all suppliers from the Philippines with *any inputs* from China, such as wooden slats, lead, erasers, metal ferrule, etc., regardless of how small' (emphasis in original) — is a Customs interpretation, or a Commerce interpretation.").

Here, the AD Order is arguably ambiguous – the Order does not specify the percentage of the pencil that must originate in China for that pencil to be considered in-scope. But, ascertaining the legal criteria for the breadth and scope of an Order is an interpretive question. Therefore, the question as framed by Plaintiff runs toward the interpretation of the scope of the Order, and not its application by CBP.

As we explained in our motion to dismiss, if there is a question as to whether the subject merchandise is covered by an AD/CVD order, "an interested party may request a scope inquiry by Commerce under 19 U.S.C. § 1516a(a)(2)(B)(vi), to determine if 'a particular type of merchandise is within the class or kind of merchandise described in an existing ... antidumping ... duty order.'" *Xerox Corp*, 289 F.3d at 794. "Commerce has the express authority to conduct a scope inquiry and to

clarify the scope of an unclear order pursuant to 19 C.F.R § 351.225(a)." *Sunpreme 2018*, 892 F.3d at 1188–89. Commerce "should in the first instance decide whether an antidumping duty order covers particular products, because the order's meaning and scope are issues particularly within the expertise of that agency." *Id.* (quoting *Xerox Corp,* 289 F.3d at 792, 795) (internal quotations omitted). A party can appeal Commerce's scope ruling before the CIT "under its exclusive jurisdiction set forth in 28 U.S.C § 1581(c) for actions "commenced under section 516A of the Tariff Act of 1930."' *Xerox Corp,* 289 F.3d at 794.

Here, Plaintiff has failed to explain why it did not exhaust this administrative remedy. Allowing Raymond Geddes to circumvent the requirement of a scope ruling from Commerce would "discourage importers from seeking scope rulings and undermine the remedial scheme established by Commerce." *Sunpreme 2018*, 892 F.3d 1186 at 1193.

While Plaintiff argues that, "{n}either Commerce nor Customs may change the scope of an antidumping or countervailing duty order through the type of informal instruction Customs suggests here," citing *Ugine & ALZ Belg. N. V. v. United States*, 517 F. Supp. 2d 1333, 1345

(Ct. Int'l Trade 2007); Pl. Br. at 22-24, neither agency has changed the scope of the AD Order. The true nature of this claim reflects a challenge to the scope of the AD Order, and not to the application of that order by CBP. Plaintiff has yet to exhaust the administrative remedies at its disposal and this case must be dismissed.

## CONCLUSION

For these reasons, defendant respectfully requests that the Court grant the motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

OF COUNSEL

John Flanagan
Attorney
International Trade Litigation
U.S. Customs and Border
Protection

Dated: October 2, 2026

By: /s/ Adam A. Vischio
ADAM A. VISCHIO
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
International Trade Field Office
26 Federal Plaza, Room 346
New York, NY 10278
(202) 305-5528

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

I certify that the foregoing submission complies with the word-limitation set forth in the Standard Chambers Procedure 2(B)(1), and contains 3,936 words.

I certify that the foregoing submission was not prepared with the assistance of a generative artificial intelligence program based on natural language prompts.

Dated: October 2, 2026

/s/ Adam A. Vischio
Adam Angelo Vischio